STATE of Wisconsin, Plaintiff-Appellant,

v.

Virgil L. BURKS, Defendant-Respondent.†

Court of Appeals

*No. 03–0472–CR. Submitted on briefs November 4, 2003.— Decided December 2, 2003.*

2004 WI App 14

(Also reported in 674 N.W.2d 640.)

† Petition to review denied 3-23-04.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Peggy A. Lautenschlager*, attorney general, and *James M. Freimuth*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James R. Lucius* of *James Lucius Law Office*, Greenfield.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. The State of Wisconsin appeals from a postconviction circuit-court order granting a new trial to Virgil L. Burks. Burks shot a police officer, and a jury convicted him of attempted first-degree intentional homicide while using a dangerous weapon. *See* Wis. Stat. §§ 940.01(1)(a), 939.32(1)(a), 939.63. Before the trial, Burks tried to waive his right to a jury. The State consented. The trial court, however, refused to approve. We reverse the postconviction order.[1]

## I.

¶ 2. The right of a criminal defendant to a trial by jury is guaranteed by both the Sixth Amendment to the United States Constitution, as made applicable to the states by Section 1 of the Fourteenth Amendment, *see Parker v. Gladden*, 385 U.S. 363, 364 (1966) (per curiam), and article 1, section 7 of the Wisconsin Constitution. The Sixth Amendment provides, as ma-

---

[1] The Honorable Robert Crawford presided over Virgil L. Burks's trial and denied Burks's request to waive his right to a jury trial. The Honorable David A. Hansher entered the post-conviction order granting Burks a new trial.

terial here: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." Article 1, section 7 of the Wisconsin Constitution is similar and, as material here, provides: "In all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial by an impartial jury."

¶ 3. Although not specifically permitted by article 1, section 7 of the Wisconsin Constitution, the legislature has granted to defendants a limited right to relinquish a trial by jury.[2]

> Except as otherwise provided in this chapter, criminal cases shall be tried by a jury selected as prescribed in s. 805.08, unless the defendant waives a jury in writing or by statement in open court or under s. 967.08(2) (b), on the record, with the approval of the court and the consent of the state.

---

[2] Significantly, and in contrast to the jury-trial right in criminal cases, the Wisconsin Constitution's grant of the right to a jury trial in *civil* cases specifically authorizes the legislature to provide for the waiver of that right: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a trial may be waived by the parties in all cases in the manner prescribed by law." WIS. CONST. art. 1, § 5; *cf. Singer v. United States*, 380 U.S. 24, 30–31 (1965) (noting that had the framers of the United States Constitution recognized a general common-law right of defendants in criminal cases "to be tried by the court instead of by a jury" "it would be difficult to understand why Article III[, Section 2: "The trial of all crimes, except in cases of impeachment, shall be by jury"] and the Sixth Amendment were not drafted in terms which recognized [that] option"). Neither party, however, has discussed the effect, if any, of the difference in the grant of the civil jury-trial right in article 1, section 5, and the grant of the criminal jury-trial right in article 1, section 7, and we do not consider it further.

WIS. STAT. § 972.02(1).[3]

## II.

¶ 4. As noted, Burks sought to waive his jury-trial right. At the hearing in open court, his lawyer gave three reasons underlying what the lawyer characterized as his "strategy" or "rationale." First, the lawyer said that he was afraid that the jury might be unduly sympathetic toward the State because the victim was a police officer, and that judges sitting as fact-finders were "somewhat more insulated and immune from the type of sympathies that would potentially sway the jury." The lawyer explained that he was concerned that the jurors' sympathy would be heightened because the trial would be held within months of the September 11, 2001, terrorist destruction of the World Trade Center.

¶ 5. Second, the lawyer indicated that he believed, given the publicity surrounding the case, that the judge, "would not be influenced in any way by community sentiment or sympathy in terms of deciding the facts and reaching a verdict." Third, the lawyer opined that the judge would be better able to assess evidence admitted subject to connection:

> I explained to Mr. Burks that in my experience trials to the court, while not obviously, and hopefully never dispensing with the strict application of the rules of evidence, courts are more willing usually to let parties at least make offers of proof and to consider evidence. I mean judges oftentimes say that, you know, might not ever let a jury hear that [the prosecutor, the defense

---

[3] WISCONSIN STAT. RULE 805.08 establishes the qualifications and sets the procedure for the selection of jurors. WISCONSIN STAT. § 967.08(2)(b) permits the jury-trial waiver hearing to be done by either "telephone or live audiovisual means."

lawyer], but I'll hear it and then I'll decide ultimately when it comes time to whether or not I am going to consider that evidence, but I will let it in for now, you can't do that with a jury. There is a lot of evidence like that that I think works potentially in Mr. Burks' favor, and we discussed that as well.

The State consented to Burks's request.

¶ 6. In not approving Burks's attempt to waive his right to a jury trial, the trial court focused on what it believed was likely to be the core issue of whether Burks intended to kill the police officer when he shot him. The trial court explained why it believed that the case should be tried by a jury: "[A]ssesment of a person's intent is something which is quintessentially suited for a jury of 12 citizens. The virtue that the jury brings to our courtroom is that they carry with them the communal assessment of the ethics and standards from our community." The trial court assured the parties that it would preserve their rights to a fair trial:

> I'll be careful in supervising this trial to assure that inadmissible evidence is not improperly suggested to the jury.[4]

---

[4] Based on his statements to the trial court in support of Burks's desire to waive his right to a jury trial, Burks's lawyer seems to have wanted more leeway in presenting evidence than that he believed would be permitted in a jury trial. Thus, the trial court's assurance that it would enforce the rules of evidence during the jury trial appears to be something that Burks sought to avoid by seeking a bench trial. As we note later in the text of the opinion, this may have been what the postconviction court meant when it said that by not approving Burks's request for a bench trial Burks "didn't get the trial he wanted."

I will be careful to assure that inflammatory evidence which are [*sic*] designed to appeal to the passions and prejudices of the jury is not presented.

I will be careful during the voir dire to assure that we pick 12 jurors and an alternate who can be indifferent to the issues in the case and approach their responsibilities as jurors, jurors with an open mind that is impartial.

(Footnote added.) The parties sought reconsideration of the trial court's decision to not approve Burks's request to waive his jury-trial right. The trial court denied the reconsideration motion in a written memorandum. The memorandum explained: "Under section 972.02(1) a judge is not obligated to approve a jury waiver simply because both sides insist on waiving a jury. This construction of section 972.02(1) would eliminate any requirement that a judge approve the jury waiver." As we see below, although our review of the trial court's legal analysis is *de novo,* we agree.

¶ 7. The postconviction court disagreed with the trial court's assessment of the law, and viewed the trial court's "approval" role under Wis. Stat. § 972.02(1) as essentially limited to assuring that the defendant's waiver of the jury-trial right was knowing and voluntary. Moreover, the postconviction court opined that the trial court's core reason for denying Burks's request, in face of what the postconviction court characterized as the State's "strong[ ]" consent, namely that a jury would be better able to assess Burks's intent when he shot the police officer, was "an insufficient finding and does not justify a denial of a jury waiver in this case." Finally, the postconviction court opined that it appeared from the affidavits submitted to it and the records of the circuit court in Milwaukee County that the trial court had a

"past pattern of behavior in refusing almost all requests for waiver of trial by jury," and pointed to the trial judge's comment in a different case that he " 'generally [does not] accept jury trial waivers' " because " 'I think that a right to a jury trial is an important right.' "

¶ 8. The postconviction court granted to Burks the relief he sought, and summed-up its reasons in an oral decision:

> At best, Judge Crawford — at best, Judge Crawford failed to exercise judicial — his judicial discretion whatsoever. At worst, he abused his discretion in denying the jury waiver at the request of the defense and the state.
>
> Based upon Judge Crawford's routine policy of automatically denying jury trial waivers, except in the six cases I discussed which I find almost meaningless, and the inadequate record he made in this case, this court has no choice but to grant the defendant's motion for a new trial to the court.

## III.

¶ 9. The scope of a trial court's authority to reject a request by a defendant in a criminal case to waive his or her right to a jury trial presents an issue of law that we decide *de novo. State v. Cook*, 141 Wis. 2d 42, 44, 413 N.W.2d 647, 649 (Ct. App. 1987). Although the right of a defendant in a criminal case to be tried by an impartial jury is well-entrenched in both the federal and state constitutions, a defendant does not have a reciprocal constitutional right to waive a jury and be tried by a judge. *Singer v. United States*, 380 U.S. 24, 26–34 (1965) (federal constitution; recounting common-law history); *Cook*, 141 Wis. 2d at 44, 413

N.W.2d at 648 (state constitution). WISCONSIN STAT. § 972.02(1) was patterned after Rule 23(a) of the Federal Rules of Criminal Procedure: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." *Cook*, 141 Wis. 2d at 44–45 & 45 n.1, 413 N.W.2d at 649 & 649 n.1.[5] *Singer* held that Rule 23(a) passed federal constitutional muster, 380 U.S. at 34–38; *Cook* held that § 972.02(1) was also valid, 141 Wis. 2d at 44–48, 413 N.W.2d at 649–650.

¶ 10. Both *Singer* and *Cook* concerned cases where the prosecution refused to give its consent to the defendant's jury-trial waiver, *Singer*, 380 U.S. at 25; *Cook*, 141 Wis. 2d at 43, 413 N.W.2d at 648; neither case involved a trial court's refusal to give its approval. Nevertheless, the rationale of both cases leads us to conclude that the trial court's "approval" of a defendant's jury-trial waiver under WIS. STAT. § 972.02(1) is not the quasi-ministerial rubber-stamping of the parties' request that the postconviction court assumed. Rather, as we explain below, like the prosecution's decision to withhold consent to a defendant's request to waive his or her right to a jury

---

[5] Rule 23(a) of the Federal Rules of Criminal Procedure has been simplified without an apparent change of meaning. It now reads:

> If the defendant is entitled to a jury trial, the trial must be by jury unless:
>
> (1) the defendant waives a jury trial in writing;
>
> (2) the government consents; and
>
> (3) the court approves.

trial, the trial court also need not explain its decision to withhold its approval, and absent extraordinary circumstances not present here, its decision to withhold approval, like the prosecution's decision to withhold consent, is not reviewable.

¶ 11. First, it is established that in Wisconsin a prosecutor's decision to withhold consent to a defendant's requested waiver of his or her right to a jury trial is not reviewable because, absent extraordinary circumstances, the courts have no authority to compel that consent. *Cook*, 141 Wis. 2d at 43–46, 413 N.W.2d at 648–649. Moreover, the State need not "justify its refusal" to consent to a defendant's jury-trial waiver. *Id.*, 141 Wis. 2d at 44–46, 413 N.W.2d at 648–649; *see also Singer*, 380 U.S. at 37 ("Rule 23(a) does not require that the Government articulate its reasons for demanding a jury trial at the time it refuses to consent to a defendant's proffered waiver."). That is because, again in the absence of extraordinary circumstances not present here, the prosecutor's refusal to consent cannot possibly harm the defendant:

> In light of the Constitution's emphasis on jury trial [*sic*], we find it difficult to understand how the [defendant] can submit the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or to due process. A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this [jury-trial] right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him.

*Singer*, 380 U.S. at 36 (quoted in part with approval and relied on by *Cook*, 141 Wis. 2d at 45, 413 N.W.2d at 649).

¶ 12. Second, it would be anomalous indeed to excuse the prosecution from having to explain its decision to withhold consent, as both *Cook* and *Singer* do, but require the trial court to explain its decision to withhold approval.[6] Indeed, there is nothing in the text of WIS. STAT. § 972.02(1) that requires either the State

----

[6] Burks argues, and the postconviction court agreed, that there is a distinction between the withholding of "consent," a right that WIS. STAT. § 972.02(1) gives to the State, and the withholding of "approval," which the statute vests in the trial court. We see no meaningful distinction between the words, except that one describes the right the statute gives to an adversary, and the other describes the power given to the trial court. Indeed, "approval" is often used as a synonym of "consent." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 482 (1993); AMERICAN HERITAGE DICTIONARY 401 (3d ed. 1992); BLACK'S LAW DICTIONARY 300 (7th ed. 1999). Thus, the American Heritage Dictionary explains: "Though *approve . . .* often means simply to consider right or good (*knew my parents wouldn't approve of what I had done*), it can also denote official consent: *'The colonel or commanding officer approves the sentence of a regimental court-martial.'* " AMERICAN HERITAGE DICTIONARY at 91 (italics in original). Significantly, referring to Rule 23(a) of the Federal Rules of Criminal Procedure, which, like § 972.02(1), uses the word "consent" when describing the government's response to a defendant's desire to waive a jury, and the word "approval" when characterizing the trial court's role, *Singer*, 380 U.S. at 36, used the word "consent" to identify the responsibility of both:

> We find no constitutional impediment to conditioning a waiver of this [jury-trial] right on the *consent* of the prosecuting attorney and the trial judge when, if either refuses to *consent*, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him.

(Emphasis added.)

or the trial court to either assess the merits of the defendant's proffered jury-trial waiver or to give a reason for withholding either "consent" or "approval." Just as *Singer* was loathe to "assume that federal prosecutors would demand a jury trial for an ignoble purpose," 380 U.S. at 37, we will not assume that trial judges in this state would withhold approval for an "ignoble purpose." Certainly, the trial court's refusal to approve Burks's proffered jury-trial waiver was not "ignoble." Thus, we reject *People v. Duchin*, 229 N.Y.S.2d 46, 48–50 (App. Div. 1962), upon which the postconviction court relied, which reversed a criminal conviction and ordered a new trial merely because the trial judge denied the defendant's request for a bench trial without giving any reason.

¶ 13. Third, as noted, the postconviction court relied in significant measure on what it perceived as the trial court's general practice of refusing to approve of jury-trial waivers, and relied on a statement in *Patton v. United States*, 281 U.S. 276, 312–313 (1930), *criticized on other grounds, Williams v. Florida*, 399 U.S. 78, 92 n.30 (1970), that a trial court should not act by mere "rote." *Patton*, which held that a defendant could—that is, has the legal right to—elect to be tried by a jury of eleven if one juror becomes indisposed after the trial starts, made the following observation:

> Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any

waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from the mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

281 U.S. at 312–313. Far from requiring trial courts to explain a decision not to approve a defendant's request to waive his or her right to a jury trial, *Patton* underscores the central role jury trials have in our system of justice and cautions trial judges that they should not rubber-stamp, "as a mere matter of rote," a defendant's desire to relinquish that right, which must be knowing and voluntary. *See State v. Anderson*, 2002 WI 7, ¶ 11, 249 Wis. 2d 586, 595, 638 N.W.2d 301, 305–306. But this does not mean that the trial court must justify its refusal to approve the waiver; nothing in *Patton* condemns a trial judge's routine refusal to permit defendants to waive the jury-trial right.

¶ 14. Finally, there is nothing in the record that indicates that the trial court's refusal to approve Burks's desire to waive his right to a jury trial prejudiced Burks. Leaving the chimera of possible prejudice for another day, we note, as did *Singer*, that the protections guarding the jury-trial process are substantial: "venue can be changed when there is a well-grounded fear of jury prejudice" and "prospective jurors are subject to voir dire examination, to challenge for cause, and to peremptory challenge." 380 U.S. at 35; *see* Wis. Stat. § 971.22 (change of venue), Wis. Stat. Rule 805.08 (juror qualification, *voir dire,* challenges),

759

Wis. Stat. § 972.03 (peremptory challenges); *see also* Wis. Stat. § 972.12 (juror sequestration).

¶ 15. To be sure, some defendants may seek to give up their right to a jury trial to secure some other, perhaps more valuable, tactical advantages. But trials are not "sporting contests," *Morris v. Slappy*, 461 U.S. 1, 15 (1983), where defendants have unfettered sway to demand strategic advantages beyond those either guaranteed by the federal and state constitutions or otherwise provided by law. Thus, we disagree with the postconviction court's observation that Burks's rights were violated because "he didn't get the trial he wanted" even though Burks "may have gotten a fair trial." *See also* fn. 4.

¶ 16. In sum, other than some vague considerations of strategy, which from what Burks's lawyer told the trial court, and recounted above, apparently focused on Burks's desire for the fact-finder to consider evidence that was not strictly admissible under the rules of evidence, there is nothing in the record that indicates that the trial court's refusal to approve Burks's request to waive the jury harmed him in any way. Indeed, on this record, it merely subjected him "to an impartial trial by jury—the very thing that the Constitution guarantees him." *Singer*, 380 U.S. at 36.

*By the Court.*—Order reversed.