IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2018 Term

_____

No.  16-1009
_____

FILED

**November 5, 2018**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

DAVID M. WASANYI,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Berkeley County
Honorable Michael D. Lorensen, Judge
Criminal Action No. 15-F-17

AFFIRMED
_____

AND

_____

No.  17-0020
_____

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

DAVID M. WASANYI,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Berkeley County
Honorable Michael D. Lorensen, Judge
Criminal Action No. 16-F-54

AFFIRMED
_____


Submitted:  October 23, 2018
Filed:  November 5, 2018

Matthew T. Yanni, Esq.                    Patrick Morrisey, Esq.
Yanni Law Firm                            Attorney General
Martinsburg, West Virginia                Robert L. Hogan, Esq.
                                          Deputy Attorney General
                                          Charleston, West Virginia

JUSTICE FARRELL delivered the Opinion of the Court.
JUSTICE ALLEN H. LOUGHRY II, suspended and, therefore, not participating.
JUSTICE PAUL T. FARRELL, sitting by temporary assignment.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review."  Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

2.      "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*."  Syl. Pt. 1, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996).

3.      "A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense."  Syl. Pt. 11, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

4.      "'The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having

i

to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense.' *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982)." Syl. Pt. 1, *State v. Jones*, 174 W.Va. 700, 329 S.E.2d 65 (1985).

5.    "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Syl. Pt. 1, *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981), *overruled on other grounds by State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994).

6.    "Before a lesser offense can be said to contribute a necessary part of a greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense. If an element necessary to establish the corpus delicti of the lesser offense is irrelevant to the proof of the greater offense, the lesser cannot be held to be a necessarily included offense." Syl. Pt. 5, *State v. Vance*, 168 W.Va. 666, 285 S.E.2d 437 (1981).

7. "The prosecuting attorney is vested with discretion in the management of criminal causes, which discretion is committed to him or her for the public good and for vindication of the public interest. Thus, the prosecutor may decide which of several possible charges to bring against an accused." Syl. Pt. 1, *State v. Satterfield*, 182 W.Va. 365, 387 S.E.2d 832 (1989).

8. "It is a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. *Constitution* for a member of a cognizable racial group to be tried on criminal charges by a jury from which members of his race have been purposely excluded." Syl. Pt. 1, *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497 (1989).

9. "To establish a prima facie case for a violation of equal protection due to racial discrimination in the use of peremptory jury challenges by the State, 'the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.' [Citations omitted.] *Batson v. Kentucky*, 476 U.S. 79 at 96, 106 S.Ct. 1712 at

1722, 90 L.Ed.2d 69 (1986)." Syl. Pt. 2, *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497 (1989).

10.  "The State may defeat a defendant's prima facie case of a violation of equal protection due to racial discrimination in selection of a jury by providing non-racial, credible reasons for using its peremptory challenges to strike members of the defendant's race from the jury." Syl. Pt. 3, *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497 (1989).

11.  "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).

12.  "The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the West Virginia Constitution." Syl. Pt. 4, in part, *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981).

13.  Pursuant to Rule 23(a) of the West Virginia Rules of Criminal Procedure, a defendant's waiver of a jury trial is conditioned upon approval of the trial court and consent of the State. Absent both the trial court's approval and the State's consent, the defendant is subject to a jury trial.

**FARRELL, Justice:**

The petitioner and defendant below, David M. Wasanyi, a pharmacist, was convicted in two separate trials of multiple felony counts of unlawful delivery of a controlled substance in violation of West Virginia Code § 60A-4-401(a) (2014).[1] In the case docketed as No. 16-1009, the petitioner was convicted of two counts of Delivery of Diazepam and sentenced to one to three years in the penitentiary for each conviction.[2] He was also convicted of one count of Delivery of Buprenorphine and sentenced to one to five years in the penitentiary for that conviction.[3] The trial court ordered that the three sentences be served consecutively. In the case docketed as No. 17-0020, the petitioner was convicted of five counts of Delivery of Oxycodone and three counts of Delivery of Methadone and sentenced to one to fifteen years in the penitentiary for each conviction.[4] He was also convicted of five counts of Delivery of Alprazolam (Xanax) and sentenced to one to three years in the penitentiary for each of those convictions.[5] The trial court ordered that certain sentences be served concurrently but consecutive to others, resulting in a total sentence in

---

[1]West Virginia Code § 60A-4-401(a) provides: "Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

[2]*See* W.Va. Code § 60A-4-401(a)(iii).

[3]*See* W.Va. Code § 60A-4-401(a)(ii).

[4]*See* W.Va. Code § 60A-4-401(a)(i).

[5]*See* W.Va. Code § 60A-4-401(a)(iii).

1

No. 17-0020 of five to seventy-five years in the penitentiary. The court ordered the sentences to be served consecutive to the sentences imposed in No. 16-1009.

Following his convictions, the petitioner filed separate appeals with this Court. By an order entered on April 4, 2018, this Court consolidated the appeals for purposes of oral argument and decision. In No. 16-1009, the petitioner contends that the circuit court erred by not instructing the jury pursuant to West Virginia Code § 60A-4-402(a)(1) (2014), which provides for a misdemeanor conviction for unlawful delivery of a controlled substance by a pharmacist, which he asserts is a lesser included offense of delivery of a controlled substance as set forth in West Virginia Code § 60A-4-401(a). In No. 17-0020, the petitioner sets forth three assignments of error. He argues that the circuit court erred by: (1) allowing the State to use a peremptory strike in violation of his equal protection rights; (2) refusing to admit into evidence at trial certain exhibits that he wished to use to show his state-of-mind and/or the reasonableness of his actions; and (3) denying his motion for a new trial.

Having considered the parties' briefs and oral arguments, the submitted appendix records, and the pertinent authorities, we find no error. Accordingly, for the reasons set forth below, the petitioner's convictions are affirmed.

## I. Facts and Procedural Background

The facts and procedural history for each case are set forth separately below.

### A. No. 16-1009

In this case, the petitioner was convicted of three felony counts of unlawful delivery of a controlled substance. At trial, the State presented evidence that the petitioner dispensed Diazepam, a Schedule IV controlled substance, commonly known as Valium, to Barbara Foulks on two separate occasions without a valid prescription. According to trial testimony, Ms. Foulks attempted to obtain prescriptions for this medication, as well as others, from a medical practice in Martinsburg, West Virginia, in March 2014. The physician's assistant who examined Ms. Foulks became suspicious and contacted the police after Ms. Foulks indicated she would obtain the medication from another source. An investigation by the Martinsburg City Police and the West Virginia Board of Pharmacy ensued, which eventually revealed that the petitioner had filled prescriptions for this medication for Ms. Foulks at the City Pharmacy[6] on December 24, 2013, and February 4, 2014. However, the pharmacy's electronic records of the prescriptions consisted of images of blank pages from the pharmacy's own prescription pads.

There was also evidence presented at trial that the petitioner had filled a prescription for Buprenorphine, a Schedule III controlled substance, for Krista Davidian on November 25, 2014. The City Pharmacy's record for that prescription indicated that

---

[6]The record indicates that the petitioner was part owner of the City Pharmacy where all of the charged offenses allegedly occurred.

the medication had been prescribed by Dr. Jafar Almashat. However, Dr. Almashat testified that neither he, nor anyone from his office, had authorized this prescription.

During the trial, the petitioner requested that the jury be instructed pursuant to West Virginia Code § 60A-4-402(a)(1) as a lesser included offense of the general unlawful delivery of a controlled substance offense set forth in West Virginia Code § 60A-4-401(a). The circuit court refused to give the instruction. Following his convictions, the petitioner was sentenced to a total of three to eleven years in the penitentiary by order entered on October 6, 2016. This appeal followed.

*B. No. 17-0020*

In this case, petitioner was indicted on ninety-two counts of delivery of a controlled substance. Prior to trial, the State elected to proceed on only thirteen counts, dismissing the other charges. As in the prior case, the offenses were alleged to have occurred at the City Pharmacy and involved two other individuals who lacked legitimate prescriptions for the medications dispensed by the petitioner. At trial, Tina Hernandez and Imogene Abshear, both residents of Kentucky, testified that they devised a scheme with another woman known as Dianne Fikes or Dianne Lacy, who worked at a pain clinic in Atlanta, Georgia. In exchange for cash, Ms. Fikes/Lacy would provide prescriptions to Ms. Hernandez and Ms. Abshear that were purportedly issued by a physician named James

4

Murtagh[7] who had practiced at the Georgia clinic. According to Ms. Abshear, someone at the Georgia clinic told her that she could have the prescriptions filled at the petitioner's pharmacy in West Virginia, which was six hundred miles from her home in Kentucky. Ms. Abshear further testified that she had obtained the petitioner's cell phone number and would contact him in advance to arrange a time to come to his pharmacy to have the prescriptions filled. The evidence indicated that the petitioner was paid in cash to fill the prescriptions and the transactions were not reported in the Board of Pharmacy's database.

Following a multi-day trial, the petitioner was convicted of all thirteen counts of unlawful delivery of a controlled substance involving the medications Oxycodone, Methadone, and Alprazolam. After the jury returned its verdict, the petitioner filed a motion for a new trial which was denied by the trial court on November 15, 2016. Subsequently, he was sentenced to a total of five to seventy-five years in the penitentiary by the final order entered on December 15, 2016. This appeal followed.

## II. Standard of Review

The petitioner sets forth multiple assignments of error which require us to employ different standards of review. Generally,

---

[7]The evidence showed that Dr. Murtagh was not practicing medicine at the Georgia clinic at the time the prescriptions were issued. In fact, testimony presented at trial indicated that the petitioner had been advised by the clinic prior to filling the prescriptions at issue that Dr. Murtagh no longer practiced there and any subsequent prescriptions allegedly signed by him would be fraudulent.

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). When a more specific standard of review applies to a particular issue, it will be set forth in our analysis. Accordingly, we proceed to consider the parties' arguments.

### III. Discussion

As with the facts and procedural history, the petitioner's assignments of error with respect to each case will be discussed separately below.

#### A. No. 16-1009

The petitioner's sole assignment of error in this case is that the trial court erred by refusing to instruct the jury pursuant to West Virginia Code § 60A-4-402(a)(1), which provides that it is unlawful for a pharmacist to dispense a controlled substance without a valid prescription.[8] Specifically, West Virginia Code § 60A-4-402 provides:

> (a) It is unlawful for any person:
> (1) Who is subject to article 3 [§§ 60A-3-301 et seq.] to distribute or dispense a controlled substance in violation of section 308 [§ 60A-3-308][.]

---

[8]A person who violates West Virginia Code § 60A-4-402(a) is subject to a misdemeanor conviction and a period of confinement of "not less than six months nor more than one year." W.Va. Code § 60A-4-402(b). The statute further provides for a fine of "not more than twenty-five thousand dollars" in addition to or in lieu of confinement. *Id.*

6

West Virginia Code §§ 60A-3-301 to -308 (2014) provide for the "Regulation of Manufacture, Distribution and Dispensing of Controlled Substances" by the State Board of Pharmacy. Pharmacists, like the petitioner, are required to register with the State Board of Pharmacy,[9] and West Virginia Code § 60A-3-308 (2014) provides that pharmacists may only dispense controlled substances pursuant to a lawful prescription of a practitioner.[10]

---

[9]West Virginia Code § 60A-3-302(a) (2014) provides:

> Every person who manufactures, distributes, or dispenses any controlled substance within this State or who proposes to engage in the manufacture, distribution, or dispensing of any controlled substance within this State, must obtain annually a registration issued by the State Board of Pharmacy or the appropriate department, board, or agency, as the case may be, as specified in section 301 [§ 60A-3-301], in accordance with its rules.

[10]West Virginia Code § 60A-3-308, titled "Prescriptions," provides as follows:

> (a) Except when dispensed directly by a practitioner, other than a pharmacy, to an ultimate user, no controlled substance in Schedule II may be dispensed without the lawful prescription of a practitioner.
> (b) In emergency situations, as defined by rule of the said appropriate department, board or agency, Schedule II drugs may be dispensed upon oral prescription of a practitioner, reduced promptly to writing and filed by the pharmacy. Prescription shall be retained in conformity with the requirements of section three hundred six [§ 60A-3-306] of this article. No prescription for a Schedule II substance may be refilled.
> (c) Except when dispensed directly by a practitioner, other than a pharmacy, to an ultimate user, a controlled substance included in Schedule III or IV, which is a prescription drug as determined under appropriate state or federal statute, shall not be dispensed without a lawful prescription of a practitioner. The prescription shall not be

7

The petitioner contends that W.Va. Code § 60A-4-402(a)(1) is a lesser included offense of West Virginia Code § 60A-4-401(a), and the circuit court should have instructed the jury in that regard.  He further argues that the jury should have received the instruction even though he was charged under the general delivery statute, West Virginia Code § 60A-4-401(a), because the offenses were alleged to have been committed in his capacity as a pharmacist.

"As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly

---

filled or refilled more than six months after the date thereof or be refilled more than five times unless renewed by the practitioner.

(d)(1) A controlled substance included in Schedule V shall not be distributed or dispensed other than for a medicinal purpose: Provided, That buprenorphine shall be dispensed only by prescription pursuant to subsections (a), (b) and (c) of this section: Provided, however, That the controlled substances included in subsection (e), section two hundred twelve [§ 60A-2-212], article two of this chapter shall be dispensed, sold or distributed only by a physician, in a pharmacy by a pharmacist or pharmacy technician, or health care professional.

(2) If the substance described in subsection (e), section two hundred twelve, article two of this chapter is dispensed, sold or distributed in a pharmacy:

(A) The substance shall be dispensed, sold or distributed only by a pharmacist or a pharmacy technician; and

(B) Any person purchasing, receiving or otherwise acquiring any such substance shall produce a photographic identification issued by a state or federal governmental entity reflecting his or her date of birth.

8

instructed is a question of law, and the review is *de novo*." Syl. Pt. 1, *State v. Hinkle*, 200

W.Va. 280, 489 S.E.2d 257 (1996). This Court has held that

> [a] trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. Pt. 11, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).


With respect to instructions for lesser included offenses, this Court has

explained that

> "[t]he question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense." *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982).

Syl. Pt. 1, *State v. Jones*, 174 W.Va. 700, 329 S.E.2d 65 (1985). Addressing the first

inquiry, this Court has held:

> The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.

 Syl. Pt. 1, *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981), *overruled on other grounds*

*by State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994). In other words,

9

> [b]efore a lesser offense can be said to contribute a
> necessary part of a greater offense, all the legal ingredients of
> the corpus delicti of the lesser offense must be included in the
> elements of the greater offense. If an element necessary to
> establish the corpus delicti of the lesser offense is irrelevant to
> the proof of the greater offense, the lesser cannot be held to be
> a necessarily included offense.

Syl. Pt. 5, *State v. Vance*, 168 W.Va. 666, 285 S.E.2d 437 (1981).

The State contends that the petitioner's argument fails under the first inquiry because West Virginia Code § 60A-4-402(a)(1) requires proof of additional elements that are not necessary to establish a violation of West Virginia Code § 60A-4-401(a). We agree. West Virginia Code § 60A-4-401 and West Virginia Code § 60A-4-402 are both part of the Uniform Controlled Substances Act codified at West Virginia Code § § 60A-1-101 to 60A-6-605 (2014) ("USCA").

> West Virginia's UCSA, adopted in 1971, is derived
> from the Uniform Controlled Substances Act of 1970, which
> was approved in that year by the National Conference of
> Commissioners on Uniform State Laws. The UCSA, in turn, is
> similar to its federal counterpart, the Federal "Controlled
> Substances Act" of 1970, as amended, 21 U.S.C. §§ 801-971
> (1988), and, in fact, the Uniform Controlled Substances Act of
> 1970 "was drafted to achieve uniformity between the laws of
> the several States and those of the Federal government."
> Uniform Controlled Substances Act of 1970 prefatory note,
> vol. 9, part II, *U.L.A.* 2 (1988).

> Both the Federal Controlled Substances Act and West
> Virginia's UCSA contain sections authorizing certain persons,
> including physicians, dentists or other statutorily defined
> practitioners,[11] to engage in certain activities with controlled

---

[11]West Virginia Code § 60A-1-101(x) (2014) defines "practitioner" as:

> substances once they comply with the registration sections of the respective Acts. Both Acts provide general penalties, applicable to "any person," for the offense of distributing or delivering controlled substances "except as authorized[.]" In addition, both Acts have separate, less severe penalty sections for violations of the technical, administrative requirements of the registration and prescription sections.

*State v. Young*, 185 W.Va. 327, 335, 406 S.E.2d 758, 766 (1991) (footnotes omitted) (footnote added).

As set forth above, West Virginia Code § 60A-4-401(a) is the general provision providing that it is unlawful for "any person" to deliver a controlled substance "except as authorized." In contrast, a person violates West Virginia Code § 60A-4-402(a)(1) only if the person is subject to West Virginia Code § 60A-3-301 to -308, and the person dispenses or distributes a controlled substance in violation of West Virginia Code § 60A-3-308. Consequently, when the elements of West Virginia Code § 60A-4-401(a) are compared with the elements of West Virginia Code § 60A-4-402(a)(1), it is clear that the latter offense contains at least two elements not required to prove a violation of the

---

(1) A physician, dentist, veterinarian, scientific investigator or other person licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to, or to administer a controlled substance in the course of professional practice or research in this state.

(2) A pharmacy, hospital or other institution licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to, or to administer a controlled substance in the course of professional practice or research in this state.

former. Indeed, a person need not be subject to Chapter 60A, Article 3 of the West Virginia Code to violate West Virginia Code § 60A-4-401(a). Having found that West Virginia Code § 60A-4-402(a)(1) contains additional elements not necessary to prove a violation of West Virginia Code § 60A-4-401(a), our inquiry need not proceed further. A violation of West Virginia Code § 60A-4-402(a)(1) is not a lesser included offense of West Virginia Code § 60A-4-401(a). Therefore, the circuit court did not err by refusing to give the jury a lesser included offense instruction with respect to West Virginia Code § 60A-4-402(a)(1).

To the extent that the petitioner is also asserting that he could only be charged under West Virginia Code § 60A-4-402(a)(1) because the offenses were allegedly committed in his capacity as a pharmacist, his argument is equally unavailing. This Court has made clear that

> [t]he prosecuting attorney is vested with discretion in the management of criminal causes, which discretion is committed to him or her for the public good and for vindication of the public interest. Thus, the prosecutor may decide which of several possible charges to bring against an accused.

Syl. Pt. 1, *State v. Satterfield*, 182 W.Va. 365, 387 S.E.2d 832 (1989). Stated another way, "[t]he prosecutor's discretion in the management of criminal causes includes decisions on what charges to file, against whom, in what court and the type of indictment to be sought, as well as, the order and timing of these activities." *Satterfield*, 182 W.Va. at 367, 387 S.E.2d at 834. Of course, "[b]efore exercising this discretion the prosecutor has a duty to investigate the facts, with care and accuracy, to examine the available evidence, the law

12

and the facts, and intelligently to weigh the chances of successful termination of the prosecution." *Id.*

Regarding West Virginia Code 60A-4-401(a), we observed in *Young* that the United States Supreme Court, addressing the statute's federal counterpart in *United States v. Moore*, 423 U.S. 122 (1975), held unanimously that

> registered physicians or other registered practitioners may be prosecuted under this statute providing the severest penalties when their activities knowingly or intentionally "fall outside the usual course of professional practice[,]" [*Moore,* 423 U.S.] at 124, 96 S.Ct. at 337, 46 L.Ed.2d at 337, referring to the statutory definition of "practitioner." The court so held regardless of whether the practitioners may also be prosecuted under another section, 21 *U.S.C.* § 842 (1988), for the less serious offenses of noncompliance with the technical, administrative requirements concerning controlled substances. *Id.* at 138, 96 S.Ct. at 343, 46 L.Ed.2d at 345.

> Accordingly, the Supreme Court of the United States in *Moore* rejected the proposition that there were two mutually exclusive systems of sanctions, a relatively toothless system for registered practitioners and a more serious system for all other persons.

*Young*, 185 W.Va. at 337, 406 S.E.2d at 768 (footnote omitted). Consequently, in *Young,* this Court found that a dentist was subject to prosecution pursuant to West Virginia Code § 60A-4-401(a) for prescribing and dispensing controlled substances outside the usual course of his professional practice regardless of the fact that he could have been prosecuted for a less serious offense because of his status as a professional. Likewise, licensed pharmacists, like the petitioner, are subject to prosecution under West Virginia Code §

60A-4-401(a) for dispensing and delivering controlled substances without a valid prescription. Accordingly, we find no merit to the petitioner's argument.

### B. No. 17-0020

The petitioner assigns three errors in this case. We address each, in turn, below.

*1. The peremptory strike.* The petitioner argues that the circuit court erred by failing to sustain his objection to the State's use of a peremptory strike to remove an African American juror from the jury panel in violation of his right to equal protection under the Fourteenth Amendment to the United States Constitution. The petitioner is an African American who came to the United States from Uganda. This Court has long recognized that

> [i]t is a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. *Constitution* for a member of a cognizable racial group to be tried on criminal charges by a jury from which members of his race have been purposely excluded.

Syl. Pt. 1, *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497 (1989). In syllabus two of *Marrs*, this Court held:

> To establish a prima facie case for a violation of equal protection due to racial discrimination in the use of peremptory jury challenges by the State, "the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can

14

be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." [Citations omitted.] *Batson v. Kentucky*, 476 U.S. 79 at 96, 106 S.Ct. 1712 at 1722, 90 L.Ed.2d 69 (1986).

180 W.Va. at 693, 379 S.E.2d at 497. This Court further held in *Marrs* that

[t]he State may defeat a defendant's prima facie case of a violation of equal protection due to racial discrimination in selection of a jury by providing non-racial, credible reasons for using its peremptory challenges to strike members of the defendant's race from the jury.

*Id.*, syl. pt. 3. Importantly,

[s]triking even a single black juror for racial reasons violates equal protection, even though other black jurors remain on the panel. The focus of the trial court's analysis should be on whether the State's reason for a challenged strike is pretextual, and not on the overall composition of the jury.

Syl. Pt. 12, *State v. Rahman*, 199 W.Va. 144, 483 S.E.2d 273 (1996).

The record shows that following voir dire, the State used a peremptory strike to remove juror number one, Mrs. C.,[12] from the jury panel. Mrs. C. was one of two African American jurors on the jury panel. As discussed above, the petitioner objected and asserted that the removal of Mrs. C. from the jury panel violated his right to equal protection. The State responded that it was using the peremptory strike because of Mrs. C's health issues

---

[12]We refer to juror number one by an initial rather than her full name because of the personal information disclosed herein. *See In re K.H.*, 235 W.Va. 254, 256 n. 1, 773 S.E.2d 20, 22 n. 1 (2015) ("Because this case involves sensitive facts, we protect the identities of those involved by using . . . initials[.])."

about which she had voluntarily informed the trial court.  In this appeal, the State maintains that it used its peremptory strike for non-racial, credible reasons.

During voir dire, Mrs. C. informed the trial court that she had been hospitalized the week before for five days and was just released the preceding Saturday. She stated that she had a dialysis appointment at 4:30 that day and was also scheduled for dialysis on Thursday.  She indicated that sitting for more than an hour and a half made her legs swell and that she was taking pain medication, namely Oxycontin and Oxycodone. Mrs. C. explained that she suffers from sickle cell anemia, a chronic illness, as does her son, who had been prescribed Methadone for treatment of his pain. Mrs. C. stated, however, that neither she nor her son had addiction issues with respect to their pain medications. Despite her health issues, Mrs. C. stated that she could serve on the jury as long as she was able to attend her dialysis appointments.  Additionally, in response to questions during voir dire, Mrs. C. indicated that her husband was formerly employed by this Court to monitor sex offenders and that he had previously worked at the Martinsburg Correctional Center. Responding to questioning from the petitioner's counsel, Mrs. C. indicated that she could fairly consider the issues.

Inasmuch as the petitioner is a member of a cognizable racial group and the State exercised its peremptory challenge to remove an African American from the jury, the petitioner made a showing sufficient to require the State to provide a satisfactory, nonracial

16

reason for striking Mrs. C. At trial, the State offered the following explanation for using

its peremptory strike:

> [Mrs. C.] presented with various health issues today. That is the state's concern. She going to be—she's got two appointments for dialysis this week. She told us that an hour and a half would be long stretches for her; and it appears that, you know, she was having some physical discomfort being in the courtroom here this morning. And so for those reasons, we thought it would be best to strike [Mrs. C.] for her personal comfort and to avoid a potential distraction or disruption of the trial and delay the trial.

Upon review, we find that the State met its burden of establishing a credible

justification for removing Mrs. C. from the jury panel. Indeed, the State's concern for Mrs.

C.'s personal comfort because of her chronic health issues, as well as the potential for delay

or distraction that might have resulted from the need to accommodate Mrs. C.'s medical

appointments, were credible reasons for the State's exercise of its peremptory strike.[13]

There is no indication of purposeful discrimination on the part of the State. Accordingly,

the circuit court did not abuse its discretion in overruling the petitioner's objection to the

State's peremptory strike.

---

[13]Additionally, when it overruled the petitioner's objection, the trial court noted:

> And the record won't show it, but the courtroom deputy, Morris Stewart, has approached me twice about [Mrs. C.] nodding off; and she does appear to be in discomfort just simply sitting in her chair. She had to be escorted from the courtroom during the mere strike process, which took by my count about 25 minutes, due to a bleeding issue.

17

*2. Exclusion of evidence.*  The petitioner next argues that the circuit court

erred by refusing to admit into evidence at trial documentation provided by the petitioner's

pharmacy customers to show his state-of-mind and/or the reasonableness of his actions.  It

is well-established that "[a] trial court's evidentiary rulings, as well as its application of the

Rules of Evidence, are subject to review under an abuse of discretion standard."  Syl. Pt.

4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).  The documents the

petitioner sought to have admitted were: (1) a letter dated November 2, 2015, designated

as Exhibit 3, which was purportedly signed by Dr. Murtagh, that stated Ms. Hernandez had

been under his care since January 15, 2014, and described the medications and dosages

allegedly prescribed for her; (2) a final report on a February 2012 MRI of Ms. Abshear's

cervical spine designated as Exhibit 4; and (3) a February 2009 MRI report concerning Ms.

Abshear's cervical spine marked as Exhibit 5.  Testimony at trial revealed that Exhibit 3

was actually prepared by Ms. Fikes/Lacy and was provided by Ms. Hernandez after the

charged offenses allegedly occurred.  The court declined to admit the letter into evidence

because of a lack of an adequate foundation.  The trial court excluded Exhibits 4 and 5 for

the stated reason that the probative value was outweighed by the potential to confuse the

jury.  In that regard, the trial court explained:

> I'm not going to entertain a great deal of detail on the
> diagnostic conditions of these patients simply because we've
> gotten into the fact that they have problems, and I'm not going
> to have this jury confused over what the role of a registered
> pharmacist is.  You refer to him as Dr. Wasanyi.  I assume he's
> got the doctorate from some institution.  But, you know, doctor
> in our culture connotes medical doctor which means prescriber.
> And, you know, I am not going to have—well, I just think it's

confusing. It certainly exceeds any probative value these documents may have, and, therefore, I'll exclude them.

Upon review, we find no basis to conclude the trial court abused its discretion by refusing to admit petitioner's Exhibits 3, 4, and 5 into evidence at trial. There was no evidence that any of the documentation was provided to the petitioner before the charged offenses were allegedly committed. Furthermore, given the limited probative value of the documentation and the significant potential to confuse the jury as recognized by the trial court, the exclusion of the evidence was not an abuse of discretion.

*3. Denial of Motion for a New Trial.* The petitioner's final assignment of error is that the trial court erred by not granting his motion for a new trial. The motion was based on the trial court's denial of the petitioner's request for a bench trial. Following his convictions in the prior case, No. 16-1009, the petitioner filed a written waiver of his right to a trial by jury in this case. During pre-trial proceedings, the petitioner, through counsel, explained why he was seeking a bench trial:

> [H]e's already been through this process one time. He believes that the evidence is extremely complex, and it's perhaps not easily understood by a jury. He believes that the jury in the first case did not really deliberate and did not really understand the evidence that was presented in the first case.

Rule 23(a) of the West Virginia Rules of Criminal Procedure addresses "[t]rial by jury" and provides that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and consent

19

of the state." In this case, the State did not oppose the petitioner's request for a bench trial,

but the trial court declined to proceed in that manner, explaining,

> In this case, I'm burdened for the fact that this is—obviously, I've got a prior case with Mr. Wasanyi. And, you know, while I have every confidence that I could segregate what I've seen and what's gone on before, I think these are the sort of things that a fresh pair of eyes or 24 fresh eyes, as the case may be, would be better—it would mean something if a jury felt that the state had not met its burden or if they felt that they had. And I just feel much more comfortable having the public's input into a serious matter of this nature and that the public confidence in a verdict of 12 ordinary citizens seeing, reacting to the evidence as a person of ordinary intelligence would than someone who is inside the courthouse and someone whose business it is to hear these cases.
>
> I think the end result, though much harder to come by in the sense of time, would be better—I think justice would be better served in my view by having the matter submitted to a jury. And, therefore, while I appreciate the opportunity to hear the matter and try it—and I don't have any doubts myself, but of course I'm not the person that I'm concerned about. I'm concerned about Mr. Wasanyi's impression after the case had been concluded as well as the general public's perception that justice was done.

In this appeal, the petitioner argues that the trial court erred by not granting

his request for a bench trial because he executed a waiver of his right to a jury trial and the

State did not object. The petitioner, however, cites no authority in support of his argument.

Instead, the petitioner's discussion of law, which consists of one paragraph, concerns the

procedure outlined in *State v. Redden*, 199 W.Va. 660, 487 S.E.2d 318 (1997),[14] for

---

[14]Syllabus point four of *Redden* holds:

20

determining whether a defendant has made a knowing and voluntarily waiver of his right to a jury trial. As the State points out, the law pertaining to the validity of a waiver of the right to a jury trial is irrelevant here because the trial court did not approve the petitioner's request to proceed with a bench trial.

The issue is whether the trial court had the authority to deny the petitioner's request for a bench trial when the State consented. This Court has long recognized that "[t]he right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the West Virginia Constitution." Syl. Pt. 4, in part, *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981). While this Court has never considered whether a defendant has a reciprocal constitutional right to a bench trial, the United States Supreme Court has clearly held that such a right does not exist.

---

When a criminal defendant in a circuit court proceeding seeks to waive the right to a jury trial, the preferred procedure is for the trial court: (1) to interrogate the defendant on the record concerning whether he understands the nature of the right he is waiving; (2) if the defendant is represented by counsel, to ascertain whether the defendant has consulted with counsel about the decision to waive a jury trial; (3) to spread upon the record sufficient information to demonstrate that the defendant's jury trial waiver is made personally, knowingly, intelligently and voluntarily; and (4) to obtain the defendant's signature on a written waiver of the right to a jury trial.

*Id.* at 662, 487 S.E.2d at 320.

21

In *Singer v. United States*, 380 U.S. 24 (1965), the petitioner therein challenged the federal counterpart of Rule 23 of the West Virginia Rules of Criminal Procedure[15] asserting that the rule affords a defendant the right to waive a jury trial "whenever he believes such action to be in his best interest, regardless of whether the prosecution and the court are willing to acquiesce in the waiver." 380 U.S. at 25. Singer had been charged with multiple counts of mail fraud, and he sought a bench trial to avoid a lengthy proceeding. *Id*. Upholding the validity of Rule 23(a), the Supreme Court explained,

> In light of the Constitution's emphasis on jury trial, we find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or due process. A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him.

---

[15] When *Singer* was decided, Rule 23(a) of the Federal Rules of Criminal Procedure provided: "'Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government.'" *Singer*, 380 U.S. at 24. The federal rule was stylistically amended after *Singer*, but remains the same substantively, providing as follows:

> (a) *Jury Trial.* – If the defendant is entitled to a jury trial, the trial must be by jury unless:
>> (1) the defendant waives a jury trial in writing;
>> (2) the government consents; and
>> (3) the court approves.

Fed. R. Civ. Proc. 23.

22

*Id*. at 36. Rule 23(a) of the West Virginia Rules of Criminal Procedure is substantively identical to its federal counterpart allowing either the State or the trial court to withhold "consent" and "approval," respectively, of a defendant's waiver of the right to a jury trial. Although *Singer* concerned the government's refusal to consent, it is clear from the Court's rationale set forth above that "the trial court's 'approval' of a defendant's jury-trial waiver . . . is not [a] quasi-ministerial rubber-stamping of the parties' request[.]" *State v. Burks,* 674 N.W.2d 640, 644 (Wis. Ct. App. 2003).[16] Rather, the rule clearly provides that if the State refuses to consent or the court refuses to approve a defendant's request for a bench trial, the defendant must be tried before an impartial jury. Accordingly, we now hold that pursuant to Rule 23(a) of the West Virginia Rules of Criminal Procedure, a defendant's waiver of a jury trial is conditioned upon approval of the trial court and consent of the State. Absent both the trial court's approval and the State's consent, the defendant is subject to a jury trial. Applying our holding to the facts of this case, we find that the circuit court committed no error.

---

[16]In *Burks*, the defendant, like the petitioner in the case *sub judice*, challenged the trial court's denial of his request for a bench trial. Upholding Wisconsin's criminal procedure rule that is also patterned after Rule 23(a) of the Federal Rules of Criminal Procedure, the Wisconsin court noted that "there is nothing in the text [of the rule] that requires either the State or the trial court to either assess the merits of the defendant's proffered jury-trial waiver or to give a reason for withholding either 'consent' or 'approval.'" 674 N.W.2d at 645-46.

## IV. Conclusion

For the foregoing reasons, the final orders of the Circuit Court of Berkeley County entered on October 6, 2016, and December 15, 2016, are affirmed.

Affirmed.